J-S24038-23

2023 PA Super 182

IN THE INTEREST OF: D.J.K., A : IN THE SUPERIOR COURT OF
MINOR : PENNSYLVANIA
:
:
:
APPEAL OF: D.J.K., A MINOR :
:
:
:
:
: No. 1751 MDA 2022

Appeal from the Dispositional Order Entered November 7, 2022
In the Court of Common Pleas of Berks County Juvenile Division at
No(s): CP-06-JV-0000183-2021

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:          **FILED: SEPTEMBER 26, 2023**

D.J.K., a juvenile, appeals from the November 7, 2022 dispositional order entered in the Court of Common Pleas of Berks County, following an adjudication of delinquency on charges of sexual assault and indecent assault.[1] Following our careful review, we affirm the dispositional order in this clear case of credibility issues.

The juvenile court summarized the relevant facts of this case as follows:

> [S.S.], an autistic female who was seventeen years old at the time of this incident, and [Appellant] were friends having met at school.  [S.S.] lived with her mother and spent weekends with her father.  During the early morning hours of July 16, 2020, while staying with her father, [S.S.] texted [Appellant] stating she was bored and wanted someone to hang out with.

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3124.1 and 3126(a)(1), respectively.

[S.S.] suggested that the two of them go to Juvenile's house although neither of them had previously visited each other's home and Juvenile agreed to meet with her. [S.S.'s] father did not object to this visit and Juvenile picked her up between 1:00 and 2:00 a.m. [Appellant] took [S.S.] to his brother's house where [he] was living. When they arrived they went to [Appellant's] bedroom on the third floor of the house where they vaped and [S.S.] drank three cans of White Claw, an alcoholic beverage.

At [Appellant's] suggestion, the two of them walked next door to a spare bedroom. [S.S.] laid down on a bed in the room and then fell from the bed, landing in a prone position. [Appellant] then removed [S.S.'s] shorts and underwear. While pushing her face down onto the floor, [Appellant] engaged in vaginal intercourse from behind. [S.S.] was not able to escape and while crying, told [Appellant] to stop but he continued to assault her for several minutes. When he completed his assault, [Appellant] left the [S.S.] in the spare bedroom, and he returned to his bedroom.

[S.S.] remained in the spare bedroom and sent several text messages throughout the night to [Appellant]. Some these texts were friendly and at one point she asked [Appellant] if she could stay at his home. [S.S.] testified she sent this text because "she was not in her right mind." [S.S.] also noticed blood on the floor of the spare bedroom as well as on her clothing and took photos of the blood stains with her cell phone. [S.S.] said she took the photographs and sent the text messages to [Appellant] because she was "sad and scared." [S.S.] also sent text messages to her stepsister, two friends, her cousin, and a friend she knew from kindergarten telling them that she had been raped or attacked. [S.S.] then fell asleep and awoke at approximately 8:00 a.m. She then observed that [Appellant] was still asleep and called her father who arrived and picked her up.

At approximately 9:15 p.m. that evening, [S.S.] told

- 2 -

her father that she had been raped by [Appellant]. [S.S.] then called her mother and later texted her telling her that she had been drinking, blacked out and [Appellant] had turned her around backwards and raped her. Mother called the Fleetwood Police Department on July 17, 2020 and reported her daughter had been raped. [S.S.] and her mother met with officer Angel Arndt of the Fleetwood Police Department later that day. Officer Arndt conducted a minimal facts interview and following [S.S.'s] directions drove [S.S.] and her mother and step-father past [Appellant's] residence. Officer Arndt referred [S.S.] to the Children's Alliance Center for an interview which took place on August 3, 2020. During the interview, [S.S.] told an Alliance representative that [Appellant] had placed his penis in her "no-no area."

The Alliance referred [S.S.] to Dr. Renee Riddle, a pediatrician, [and] an expert in the area of child abuse examinations for an evaluation. Dr. Riddle examined [S.S.] on August 18, 2020. It was Dr. Riddle's understanding from her discussion with [S.S.] that the latter had experienced vaginal penetration. Dr. Riddle's examination revealed that [S.S.] had a healed hymenal transection. The doctor opined that this observation was evidence that supported a vaginal penetration. The doctor said that the healed injury would explain [S.S.'s] observations of bleeding after the assault.

On August 13, 2020, the Fleetwood Police Department conducted a search of juvenile's house pursuant to a warrant but uncovered no evidence. County Detective Kyle Rentschler processed the bedroom where [S.S.] had been assaulted for blood stains but failed to detect any blood. For reasons that remain unclear, the Fleetwood Police Department did not forward this case to the Berks County District Attorney's office until February 16, 2021.

Juvenile court opinion, 2/14/23 at 1-4 (citations omitted).

On September 27, 2021, the Commonwealth filed a petition alleging Appellant was delinquent of rape by forcible compulsion, sexual assault, and two counts of indecent assault. On October 26, 2022, the Commonwealth filed a motion *in limine* which sought to bar the admission of evidence that S.S. had made a complaint to police that an unrelated individual had sexually assaulted her in June and October 2021. Hearings were held on these matters on October 27 and November 7, 2022. The juvenile court ultimately found that S.S.'s unrelated claim of sexual assault was barred under the Rape Shield Statute, 18 Pa.C.S.A. § 3104, and granted the Commonwealth's motion *in limine*.

As noted, on November 7, 2022, the juvenile court adjudicated Appellant delinquent of one count each of sexual assault and indecent assault. Appellant was placed on formal probation and ordered not to have any contact with the victim. Notes of testimony, 11/7/22 at 219-223. On November 14, 2022, Appellant filed a timely post-dispositional motion alleging that the juvenile court erred in granting the Commonwealth's motion *in limine* and that the adjudication was against the weight of the evidence. The juvenile court denied this motion on November 17, 2022. This timely appeal followed

on December 9, 2022.[2]  Appellant and the juvenile court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

> I. Whether the juvenile court erred by granting the Commonwealth's Motion *in Limine* to exclude Appellant's proffer of admissible, relevant evidence based upon the Rape Shield Law[?]
>
> II. Whether the juvenile court abused its discretion in ruling that the adjudication of delinquency was not against the weight of the evidence despite the testimony of S.S. being contradicted by multiple other witnesses' testimony and the lack of evidence to support a conclusion that the Appellant engaged in sexual intercourse with S.S. without her consent[?]

Appellant's brief at 5.

## I.    Exclusion of S.S.'s Unrelated Complaint of Sexual Assault

Appellant first argues that the juvenile court erred in granting the Commonwealth's motion *in limine* to exclude evidence that S.S. had made a complaint to police that an unrelated individual had sexually assaulted her in

---

[2] Appellant purports to appeal "from the adjudication of delinquency entered on this matter November 7, 2022, and the subsequent denial of the Post-Dispositional Motion **Nunc Pro Tunc** entered on this matter November 17, 2022." However, in a juvenile action, an appeal properly lies from the dispositional order. **See In the Interest of J.D.**, 798 A.2d 210, 211 n.1 (Pa.Super. 2002) (stating, "the appealable order is not the adjudication of delinquency (the equivalent of a finding of guilt in criminal matters), but rather is the dispositional order (the equivalent of the judgment of sentence in criminal matters).").

June and October 2021, in accordance with the Rape Shield Statute. Appellant's brief at 24.

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A *motion in limine* differs from a suppression motion in that a suppression motion is designed to preclude evidence that was obtained in violation of a defendant's constitutional rights, while a motion *in limine* precludes evidence that was constitutionally obtained but which is prejudicial to the moving party.

*Commonwealth v. Reese*, 31 A.3d 708, 715 (Pa.Super. 2011) (citation omitted).

Generally, "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Crosley*, 180 A.3d 761, 768 (Pa.Super. 2018) (citation omitted), *appeal denied*, 195 A.3d 166 (Pa. 2018). This Court has emphasized that a juvenile court's ruling on the admissibility of a sexual abuse victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. *Commonwealth v. K.S.F.*, 102 A.3d 480, 483 (Pa.Super. 2014). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias,

or ill-will, or such lack of support so as to be clearly erroneous." ***Crosley***, 180 A.3d at 768.

The Rape Shield Statute restricts the introduction of evidence of a victim's prior sexual conduct and provides, in relevant part, as follows:

> Evidence of specific instances of the alleged victim's past sexual conduct, past sexual victimization, allegations of past sexual victimization, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a). The purpose of the Rape Shield Statute "is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." ***Commonwealth v. Burns***, 988 A.2d 684, 689 (Pa.Super. 2009) (citation omitted), ***appeal denied***, 8 A.3d 341 (Pa. 2010).

This Court has recognized several exceptions to the general prohibition against the admission of evidence of victim's prior sexual conduct, in an effort "to reconcile the effect of the statute in excluding evidence with the accused's sixth amendment right to confrontation and cross-examination." ***Commonwealth v. Largaespada***, 184 A.3d 1002, 1007 (Pa.Super. 2018) (citations omitted), ***appeal denied***, 197 A.3d 223 (Pa. 2018).

> Established exceptions include evidence that negates directly the act of intercourse with which a defendant is charged, evidence demonstrating a witness' bias, or evidence that attacks credibility. Notably, evidence

> tending to directly exculpate the accused by showing that the alleged victim is biased and thus has a motive to lie, fabricate, or seek retribution is admissible at trial.

*Id.* (citations and internal quotation marks omitted).

A defendant wishing to introduce evidence of a victim's prior sexual conduct that falls within an exception to the Rape Shield Statute must make a specific, written proffer to the court. *See* 18 Pa.C.S.A. § 3104(b). Once a defendant meets this threshold requirement, the court is then required to hold an *in camera* hearing to determine whether the evidence is "relevant to exculpate the accused, more probative than prejudicial, and non-cumulative in nature." *Id.*; *Largaespada*, 184 A.3d at 1007 (citation omitted).

Instantly, the juvenile court conducted a hearings on this matter, at the conclusion of which it barred the admission of evidence that S.S. had made a complaint to police that an unrelated individual had sexually assaulted her in June and October 2021. The juvenile court found that S.S.'s allegations against an unrelated individual were not exculpatory in nature but rather "separate incidences of sexual victimization" barred by the Rape Shield Statute. Juvenile court opinion, 2/14/23 at 9. The juvenile court further found that these allegations were irrelevant and did not directly bear on S.S.'s credibility:

> [T]hese incidents occurred eleven and fifteen months respectively after the assault in the instant case, there was no connection between [Appellant] and the alleged assailant [S.S.] encountered in 2021, and these latter incidents do not show bias or hostility to

> [Appellant] nor a pattern of behavior that would impugn [S.S.'s] credibility[.] Also, [Appellant] possessed alternative means of challenging the credibility of [S.S.] such as [her] text messages to [Appellant], the testimony of the fiancée of [Appellant's] brother, and the boy who roomed with [Appellant] on the night of [S.S.'s] assault.

*Id.* at 8-9.

Following our careful review, we agree with these conclusions. S.S.'s allegations of sexual assault against an unrelated individual in no way exculpates Appellant for his crimes, nor does it provide a basis to infer that S.S. had a bias or motive to fabricate allegations against Appellant in the instant matter. As a panel of this Court recently emphasized in *Commonwealth v. Allen*, 284 A.3d 958 (Pa.Super. 2022) (unpublished memorandum), *appeal denied*, 293 A.3d 562 (Pa. 2023), "[t]he fact that a sexual assault complainant has been a victim of sexual assaults by persons other than the defendant creates no logical inference that she has a motive to fabricate accusations against the defendant and has no probative value with respect to her credibility or the defendant's guilt or innocence." *Id.* at *5 (citations omitted). Based on the foregoing, Appellant's contention that the juvenile court abused its discretion in barring S.S.'s unrelated complaint of sexual assault must fail.

## II.    Weight of the Evidence

Appellant next argues that his adjudication of delinquency for sexual assault and indecent assault were against the weight of the evidence because

S.S's testimony regarding details of the assault was contradicted by multiple other witnesses. Appellant's brief at 30.

Our standard of review of a challenge to the weight of the evidence is well settled. "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Galvin**, 985 A.2d 783, 793 (Pa. 2009) (citation omitted), **cert. denied**, 559 U.S. 1051 (2010). "[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Miller**, 172 A.3d 632, 643 (Pa.Super. 2017) (citation omitted), **appeal denied**, 183 A.3d 970 (Pa. 2018).

> [W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Shaffer**, 40 A.3d 1250, 1253 (Pa.Super. 2012) (citation omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

- 10 -

> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations and emphasis omitted).

In sum, the juvenile court should reverse an adjudication of delinquency when it is "so contrary to the evidence as to shock one's sense of justice and the award of a new [hearing] is imperative so that right may be given another opportunity to prevail." *In re J.B.*, 106 A.3d 76, 95 (Pa. 2014) (citations omitted).

Upon review, we find that the juvenile court properly exercised its discretion in concluding that the adjudication of delinquency was not against the weight of the evidence. "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Andrulewicz*,

911 A.2d 162, 165 (Pa.Super. 2006) (citation omitted), ***appeal denied***, 926 A.2d 972 (Pa. 2007).

Here, the juvenile court, sitting as factfinder, found that the testimony of S.S. credible and elected not to believe Appellant's version of the events. Juvenile court opinion, 2/14/23 at 15. The juvenile court held that "[S.S.] convincingly testified that she had been sexually assaulted by [Appellant]" and it "took into account [S.S.'s] age, the traumatic nature of her experience, as well as her diagnosis of autism[]" in reaching this conclusion. ***Id.*** at 15, 17. The court further emphasized that "[t]he evidence in this case was not so one-sided or so weighted in favor of acquittal that [an adjudication of delinquency] shocks one's sense of justice." ***Id.*** at 15 (internal quotation marks omitted).

Appellant essentially asks us to reassess the juvenile court's credibility determinations. We are precluded from reweighing the evidence and substituting our judgment for that of the factfinder. ***Clay***, 64 A.3d at 1055. Accordingly, Appellant's weight claim must fail.

For all the foregoing reasons, we affirm the November 7, 2022 dispositional order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/26/2023

- 12 -