J-S34027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.L.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.L.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 426 WDA 2024 |

Appeal from the Dispositional Order Entered March 19, 2024
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-JV-0000100-2023

BEFORE: DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:          **FILED: January 23, 2025**

      C.L.W., a minor, appeals from the dispositional order imposed following his adjudication of delinquency for criminal mischief, disorderly conduct, and harassment.[1] We affirm.

      At the time of the incident in this matter, C.L.W., thirteen years old, and the victim, James Guy ("Guy"), were neighbors with a history of conflict between their families. The juvenile court summarized the relevant factual and procedural history:

      On September 2, 2023, [C.L.W.] was riding his bike in his . . . neighborhood; he jumped off, and the bike continued on and struck [Guy's] parked vehicle[, causing damage]. Corporal [John] Krill [("Corporal Krill")] of the Southern Armstrong Regional Police Department arrived at the scene and conducted interviews with witnesses[, including neighbor and eyewitness, William Bracken, Jr. ("Bracken")] and [C.L.W.] As a result of those interviews,

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 3304(a)(5), 5503(a)(4), 2709(a)(3).

[C.L.W.] was charged with criminal mischief, [graded as a second-degree misdemeanor,] disorderly conduct, and harassment.

Juvenile Court Opinion, 5/30/24, at 1-2 (unnecessary capitalization omitted and quotation marks added).

During the adjudicatory hearing on January 24, 2024, C.L.W. initially stated that he would stipulate to the sufficiency of evidence for the criminal mischief charge. **See** N.T., Adjudicatory Hearing, 1/24/24, at 4. The juvenile court questioned C.L.W. about the underlying incident, and C.L.W. responded that he "jumped off" the bicycle and tried "to grab it . . . but it got too far away from" him. **Id**. at 7. Based on this averment that he did not intentionally damage property, the juvenile court rejected the parties' stipulation for criminal mischief and proceeded to conduct the adjudicatory hearing. **See id**.

The juvenile court heard testimony from witnesses Bracken, Guy, and Corporal Krill. Bracken stated that he observed C.L.W. riding his bicycle near Guy's vehicle and the bicycle struck the vehicle. Bracken testified on cross examination that C.L.W. tried to grab the back wheel of the bicycle when it hit the car, and it did not "look like [C.L.W.] was trying to hit the vehicle" with his bicycle. N.T., 1/24/24, at 12.

Guy testified that he observed C.L.W. riding his bicycle, "really pulling on the handlebars [and] generating speed," jumping off it, then allowing it to coast without a rider on it. **Id**. at 15. The bicycle struck Guy's car, damaging the paint and leaving "stress marks in the plastic bumper." **Id**. at 17. Guy also testified he had a video of C.L.W. "tearing up [his] vehicles," photos of

C.L.W. "throwing rocks at [his] new truck," and "doing all kinds of things." *Id*. at 16.

Pertinently, defense counsel raised two objections, based on relevance, to Guy's additional testimony about: (1) "being harassed numerous times because of an allegation of [C.L.W.] touching [his ten]-year-old daughter," and (2) experiencing "all kind of problems from these people," and C.L.W.'s "mother and stepdad pick[ing] up where he left off [*sic*]." *Id*. at 14, 16. In overruling defense counsel's objection to Guy's testimony about his ten-year-old daughter, the juvenile court found Guy's testimony relevant because the Commonwealth charged C.L.W. with harassment — course of conduct. *See id*.at 14; *see also* Juvenile Court Opinion, 5/30/24, at 4. The court also overruled the second objection but noted C.L.W.'s exception. *See* N.T., 1/24/24, at 16.

C.L.W. presented the testimony of Corporal Krill, who testified that when he interviewed C.L.W. about the incident, he "stated that it was an accident." N.T., 1/24/24, at 26-27. Corporal Krill also testified that he was aware of the ongoing conflict between Guy, C.L.W., and C.L.W.'s family. *See id.* at 26.

The juvenile court summarized:

Following the testimony, the court found [that C.L.W. committed] the delinquent acts charged.

A disposition hearing was conducted on March 19, 2024, during which the court heard testimony from [C.L.W.'s] probation officer[] and . . . Guy. The court placed [C.L.W.] on one year's probation, ordered him to perform [twenty] hours of community

service, pay [$1,200] restitution to . . . Guy, and comply with other conditions.

On April 3, 2024, [C.L.W.] filed his notice of appeal; the court ordered him to file a [Pa.R.A.P. 1925(b)] concise statement of errors complained of on appeal, and he timely complied.

Juvenile Court Opinion, 5/30/24, at 2 (unnecessary capitalization omitted).

C.L.W. raises the following issues for our review:

I.      Did the [juvenile] court abu[]se its discretion [in] permitting irrelevant testimony from Commonwealth witness . . . Guy, over the objections of defense counsel?

II.     Was the evidence suffic[i]ent to support finding [C.L.W. committed,] beyond a reasonable doubt[,] the charges of criminal mischief . . .and harassment . . .?

III.    Did the [juvenile] court abuse its discretion by giving undue weight to the testimony of . . . Guy, who demonstrated animus towards [C.L.W. and C.L.W.'s] family, and whose testimony was contradicted by all other witnesses?

C.L.W.'s Brief at 5 (issues reordered for ease of disposition).

In his first issue, C.L.W. challenges the juvenile court's admission of "impermissible testimony" from Guy. C.L.W.'s Brief at 12. We begin by noting that "[t]he Juvenile Act[2] grants juvenile courts broad discretion when determining an appropriate disposition. . . . We will disturb a juvenile court's disposition only upon a showing of a manifest abuse of discretion." *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014) (citations omitted and footnote added). Moreover, "[i]n a juvenile proceeding, the hearing judge sits as the finder of fact." *In re L.A.*, 853 A.2d 388, 391 (Pa. Super. 2004).

---

[2] *See* 42 Pa.C.S.A. §§ 6301-6387.

We review juvenile court rulings on the admissibility of evidence for an abuse of discretion. ***See Interest of D.J.K.***, 303 A.3d 499, 504 (Pa. Super. 2023). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Id***.

The Pennsylvania "[R]ules of [E]vidence govern proceedings in all courts of the Commonwealth of Pennsylvania's Unified Judicial System, except as otherwise provided by law." Pa.R.E. 101(a).

> Juvenile proceedings, by design of the General Assembly, have always lacked much of the trappings of adult criminal proceedings. [J]uvenile hearings [are] non-adversarial, informal proceedings, where the strict rules of evidence and procedure [are] relaxed and . . . the judge [may] analyze the child's needs and fashion the best possible remedy.

***Commonwealth v. Hale***, 85 A.3d 570, 584 (Pa. Super. 2014) (citations omitted).

Relevance is the threshold for the admissibility of evidence. ***See Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008). "Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 726 (Pa. Super. 2015) (citation omitted). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if

- 5 -

its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

The Crimes Code defines the offense of criminal mischief in pertinent part as follows: "A person is guilty of criminal mischief if he . . . intentionally damages real or personal property of another[.]" 18 Pa.C.S.A § 3304(a)(5). If the intentional damage results in pecuniary loss in excess of $1,000, the offense is graded as a misdemeanor of the second degree. ***See*** 18 Pa.C.S.A § 3304(b). A person acts intentionally if "it is his conscious object to engage in conduct of [a certain] nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i). Intent may be proven by direct or circumstantial evidence. ***See Commonwealth v. Horlick***, 296 A.3d 60, 63 (Pa. Super. 2023).

A person commits harassment, in pertinent part, if, "with intent to harass, annoy or alarm another, [he] engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa.C.S.A § 2709(a)(3). The harassment statute defines a "course of conduct" as "a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." 18 Pa.C.S.A § 2709(f). A single act will not support a conviction under section 2709(a)(3). ***See Commonwealth v Battaglia***, 725 A.2d 192,

- 6 -

194 (Pa. Super. 1999). This section also requires the finder of fact "to infer a specific intent, and it specifies the conduct must be of a non-legitimate nature." *Id*.

C.L.W. argues that the juvenile court erred in overruling his two objections to Guy's testimony about: (1) "being harassed numerous times because of an allegation of" C.L.W. inappropriately touching his ten-year-old daughter; and (2) prior interactions with C.L.W.'s mother and stepfather. *See* N.T., 1/24/24, at 14, 16; *see also* C.L.W.'s Brief at 12-18. C.L.W. maintains that: (1) the instance involving Guy's daughter was "an unrelated and uncharged criminal accusation;" (2) Guy's testimony did not tend to "make a fact more or less probable" and was not "of consequence in determining the action"; (3) C.L.W.'s mother and stepfather "were only mentioned by" Guy and "were not involved in this case in any capacity;" and (4) the testimony also "demonstrate[d] Guy's] animus toward" C.L.W. and his family. C.L.W.'s Brief at 13, 15, 17.

The Commonwealth responds that the juvenile court properly admitted Guy's testimony to: (1) demonstrate that C.L.W.'s prior actions constituted additional instances of harassment — course of conduct; and (2) establish motive as to why C.L.W. would want to cause damage to Guy's vehicle. *See* Commonwealth's Brief at 6.

In its opinion, the juvenile court suggested that C.L.W. waived his objection to the portion of Guy's testimony about C.L.W.'s mother because he did not object to it. *See* Juvenile Court Opinion, 5/30/24, at 4-5 Juvenile Court Opinion, 5/30/24, at 4-5 (*citing* N.T., 1/24/24, at 16-17). C.L.W. denies that he has waived this issue, as he did specifically object to Guy's testimony about his mother and stepfather, but "did not object any further, as the [juvenile] court had already ruled on the matter." C.L.W.'s Brief at 17 (*citing* N.T., 1/24/24, at 16-18).

After review of the hearing transcript, we conclude that C.L.W. did not waive an objection to Guy's testimony about C.L.W.'s mother. Defense counsel clearly raised the objection when Guy testified to incidents with C.L.W.'s mother and stepfather. *See* N.T., 1/24/24, at 16. The juvenile court allowed Guy to continue testifying about the incidents, stating, "I'll overrule the objection. I will note your exception. You can finish." *Id*. On this record, we do not find waiver due to a lack of second objection to Guy's testimony.

However, after reviewing the record, we conclude that C.L.W.'s arguments warrant no relief.[3] As stated above, Guy testified: "[W]e had been . . . harassed numerous times because of an allegation of [C.L.W.] touching my [ten]-year- old daughter. . . ." N.T., 1/24/24, at 14. At this juncture, defense counsel objected, arguing this allegation was not relevant to the charges in this case. Although the juvenile court overruled the objection, Guy

---

[3] This Court may affirm a court's ruling on any valid basis appearing of record. *See **Commonwealth v. Fant***, 146 A.3d 1254, 1265 n.13 (Pa. 2016).

did not make any further mention of C.L.W.'s alleged interaction with his daughter. Instead, Guy testified about his observations of the underlying incident, as well as previous instances of harassment by C.L.W. towards him and his family.

Guy then testified:

> . . . I have video of [C.L.W.] tearing up my vehicles on camera, doing all kinds of things. I have pictures of him throwing rocks at my new truck. I have all kind of problems, all kind of problems from these people, and the PFA has helped so much now that the mother and stepdad pick up where he left off. [*sic*]. . .

N.T., 1/24/24, at 14, 16. Defense counsel lodged his second objection here. The juvenile court overruled it, and Guy continued to testify about interactions between C.L.W.'s family and his family. *See id*. at 16-17.

We conclude the juvenile court did not abuse its discretion in finding Guy's testimony was relevant to whether C.L.W. intended to damage Guy's vehicle. First, Guy's testimony was admissible to prove that C.L.W.'s actions constituted a pattern of conduct relevant to the charge of harassment. As stated above, to establish harassment, the Commonwealth must prove that the defendant intended to harass, annoy, or alarm another and "engages in a course of conduct . . . which serve no legitimate purpose." *See* 18 Pa.C.S.A. § 2709(a)(3). The juvenile court noted in its concluding remarks on the record that "this was an intentional act . . . as a result of ongoing tensions between these parties." N.T., 1/24/24, at 29. Thus, we conclude that the juvenile court did not abuse its discretion in finding the testimony relevant to show C.L.W.'s motive.

Second, Guy's testimony was relevant to the Commonwealth's case of establishing criminal mischief and disorderly conduct. As stated above, to prove criminal mischief, the Commonwealth must demonstrate that the defendant intentionally caused damage to another person's real or personal property. *See* 18 Pa.C.S.A § 3304(a)(5). "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(4). Here, the ongoing tensions between Guy and C.L.W.'s family were relevant to C.L.W.'s state of mind as to whether he intended to damage Guy's vehicle, and intended to cause, or recklessly caused, public inconvenience, annoyance, or alarm. *See* 18 Pa.C.S.A § 5503(a)(4), 3304(a)(5).

Furthermore, we determine that Guy's testimony was not so prejudicial as to outweigh its probative value. *See* Pa.R.E. 403, *comment* (explaining that "'[u]nfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially"). As stated above, Guy testified briefly and vaguely about harassment due to an allegation that C.L.W. inappropriately touched his daughter. *See* N.T., 1/24/24, at 14. However, after the juvenile court overruled defense counsel's objection, Guy did not make any further mention of this situation, and instead, immediately turned to the underlying bicycle incident. *See id*. at 14-15. The juvenile court made no reference to Guy's

- 10 -

daughter in its analysis of any issue on appeal. With respect to the testimony about C.L.W.'s mother and stepfather, we incorporate our discussion above, that the juvenile court properly found the testimony was relevant to show an ongoing dispute or tensions between the two families, which served as a relevant context to the underlying incident. Thus, the juvenile court did not abuse its discretion by allowing Guy's testimony.

In his second issue, C.L.W. challenges the sufficiency of the evidence to sustain his delinquency adjudications for criminal mischief and harassment. **See** C.L.W.'s Brief at 21-27. Before proceeding to the merits of C.L.W.'s sufficiency arguments, we must determine whether he has preserved them for our review. It is well-established that "any issues not raised in a [Rule] 1925(b) statement will be deemed waived" for appellate review. **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). Pennsylvania Rule of Appellate Procedure 1925(b) provides that in a statement of matters complained of on appeal, an appellant "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge," and issues **that are not properly raised are deemed waived**. Pa.R.A.P. 1925(b)(4)(ii), (vii). Additionally, this Court has stated:

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement **must state with specificity the element or elements [of the challenged offense] upon which the appellant alleges that the evidence was insufficient**. Such specificity is of particular importance in cases where . . . an appellant was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. . . .

- 11 -

***In Interest of J.G.***, 145 A.3d 1179, 1189 (Pa. Super. 2016) (citation and quotation marks omitted, emphasis added).

Here, the juvenile court adjudicated C.L.W. delinquent of three separate crimes — criminal mischief, disorderly conduct and harassment — each of which contained numerous elements. In his Rule 1925(b) statement, however C.L.W. only included a challenge to the intent element of the criminal mischief offense and failed to specify any challenge to the harassment offense.[4] ***See*** Concise Statement of Errors Complained of on Appeal, 4/24/24, at unnumbered 1-2. Therefore, we are constrained to conclude that C.L.W. has waived any challenge to the sufficiency of the evidence for harassment. ***See In Interest of J.G.***, 145 A.3d at 1189.

We now address together the remainder of C.L.W.'s second issue —a challenge to the sufficiency of the evidence for criminal mischief — and third issue — the weight of the evidence.

A challenge to the sufficiency of the evidence presents a question of law, for which this Court's standard of review is *de novo*, and our scope of review is plenary. ***See Interest of E.L.W.***, 273 A.3d 1202, 1205 (Pa. Super. 2022). Furthermore:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence

---

[4] In his appellate brief, C.L.W. concedes that the Commonwealth presented sufficient evidence to establish the charge of disorderly conduct. ***See*** C.L.W.'s Brief at 25.

following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a [juvenile's] innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*Id*. (citation omitted).

"A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Interest of N.A.P.*, 216 A.3d 330, 336 (Pa. Super. 2019) (citations and quotation marks omitted). "An argument that the finder of fact should have credited one witness's testimony over that of another goes to the weight of the evidence, not the sufficiency of the evidence." *Commonwealth v. Smyser*, 195 A.3d 912, 916 (Pa. Super. 2018).

This Court has explained:

[W]e may reverse the juvenile court's adjudication of delinquency only if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the juvenile court has ruled on the

- 13 -

weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, this Court is limited to a consideration of whether the juvenile court palpably abused its discretion in ruling on the weight claim. Hence, a juvenile court's denial of a weight claim is the least assailable of its rulings, as conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve.

***Interest of N.A.P.***, 216 A.3d at 336 (citations and quotation marks omitted).

Instantly, C.L.W. asserts that the Commonwealth did not present sufficient evidence with respect to the intent element of his juvenile adjudication for criminal mischief. C.L.W. maintains his innocence, claiming that he did not intend to damage Guy's car. First, by way of background, we reiterate that at the beginning of the adjudicatory hearing, C.L.W. stated he would stipulate to the criminal mischief charge. However, upon questioning by the juvenile court, C.L.W. stated that he "jumped off" the bicycle and tried "to grab it . . . but it got too far away from" him. N.T., 1/24/24, at 7. On appeal, C.L.W. concedes that his statement was an "unsworn admission," and we note he did not make the statement under oath and did not face cross examination. ***See*** C.L.W.'s Brief at 23. Nevertheless, C.L.W. claims that the juvenile court should have considered this unsworn assertion as evidence that he did not intentionally cause damage to Guy's vehicle. He reasons "[i]t does not seem fair . . . that his unsworn statements can negatively impact the outcome of his planned stipulation but cannot allow [him] to benefit from the same statement . . . ." ***Id***. at 24. Additionally, C.L.W. argues that the juvenile court erred in finding Guy's testimony credible. C.L.W. points to Bracken's

testimony, that he saw him attempt to stop the bicycle, as well as Corporal Krill's testimony, that C.L.W. told him, similarly, that he tried to stop the bicycle.

We conclude that C.L.W.'s arguments implicate credibility considerations and therefore concern weight of evidence determinations, rather than the sufficiency of the evidence. Accordingly, we will address them together with C.L.W.'s third issue.

In his third issue, C.L.W. challenges the weight of the evidence. He claims that the juvenile court erred by giving Guy's testimony "undue weight" because: (1) Guy displayed "clear animus" towards C.L.W. and his family during the hearing; (2) Guy openly discussed the history of "bad blood" with C.L.W. and his family; and (3) Guy "was animated and upset, . . . was speaking" in a "raised voice," and went on "rants" in his testimony. *Id*. at 18, 20. C.L.W. also asserts that the juvenile court abused its discretion by not accepting Bracken's testimony that it appeared C.L.W. attempted to stop the bike, which supported C.L.W.'s contention that this incident was an accident. *Id*. at 18-19.

The juvenile court considered C.L.W.'s sufficiency and weight challenges and concluded that they lacked merit. The juvenile court aptly reasoned:

> Although . . . Bracken testified that it [did] not look like [C.L.W.] was trying to hit the vehicle during his stunts, the court was persuaded by . . . Guy's detailed testimony:
>
>> [C.L.W.] was really pulling on the handlebars of the bicycle generating speed. And he pushed off with

- 15 -

hands and foot about ten feet from me and allowed the bike to hit my girlfriend's car . . ..

When I spun around, I caught [C.L.W.] actually pulling on the handlebars so hard and generating so much speed and he pushed off and his foot actually pushed on the pedal and allowed the bike to travel the other [ten] feet.

The logical and reasonable inference is that by pushing the bike with his foot, [C.L.W.] intended for the bike to strike the car.

Juvenile Court Opinion, 5/30/24, at 7 (footnotes omitted).

The juvenile court also determined that C.L.W.'s weight of the evidence claim lacked merit:

[C.L.W.'s unsworn statement] does indeed contradict . . . Guy's testimony. [C.L.W. stated] that he jumped off his bike and he tried to grab it, but it got too far away from him. The only other possible testimony that might contradict that of . . . Guy was that of [Bracken, who] testified that he saw [C.L.W.] jumping off his bike a couple of times and letting it free coast, uncontrolled, and the last time he did it, the bike struck . . . Guy's vehicle. During cross-examination, defense counsel asked . . . Bracken if [C.L.W.] was trying to hit the vehicle during these stunts, to which . . . Bracken responded no. On the other hand, . . . Guy testified that . . . Bracken told him to "watch out," and he "caught [C.L.W.] actually pulling on the handlebars so hard and generating so much speed and he pushed off and his foot actual[l]y pushed on the pedal and allowed the bike to travel the other [ten] feet. It was to hit me, sir. I leapt out of the way just in time and he hit the car." [*sic*]

*Id*. at 5-6 (footnotes omitted).

After review of the record, we conclude the juvenile court did not err in finding C.L.W.'s actions constituted criminal mischief, disorderly conduct, and harassment. The juvenile court explicitly considered Bracken's testimony, on cross examination, that C.L.W. attempted to grab the back wheel of the

bicycle, and it did not appear that C.L.W. was trying to hit the vehicle with his bicycle. **See** N.T., 1/24/24, at 12. The juvenile court credited, however, Guy's testimony that C.L.W. was "pulling on the handlebars of the bicycle" and "generating speed." **See id**. at 15. The bicycle hit the vehicle hard enough to bend the bicycle's wheel and leave marks on the vehicle's bumper. **See id**.

While Bracken's testimony supported the inference that this incident was accidental in nature, the juvenile court was free to resolve inconsistencies between the testimony of witnesses. **See Interest N.A.P**, 216 A.3d at 336. the juvenile court, as the finder of fact, found Guy's testimony credible and concluded that it supported the inference that C.L.W. intentionally committed the act. We reiterate that this Court may not reconsider "the underlying question of whether the verdict is against the weight of the evidence." **Id**. We do not disturb this credibility finding nor do we substitute our judgment for that of the juvenile court. **See id**. We conclude that the evidence was not "so one-sided or so weighted in favor of acquittal" that the juvenile court palpably abused its discretion in rejecting C.L.W.'s weight claim. **Id**. Thus, C.L.W.'s final issue is without merit.

Accordingly, we affirm the dispositional order.

Dispositional order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/23/2025